IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CHRISTOPHER LEE WILLINGHAM,** § § § | |
| **Plaintiff,** § § | Civil Action No. CIV-23-82-JAR |
| v. § § | |
| **BOARD OF COUNTY COMMISSIONERS FOR MCCURTAIN COUNTY, OKLAHOMA; MCCURTAIN COUNTY SHERRIFF'S OFFICE; KEVIN CLARDY, in his official capacity; and ALICIA MANNING, in her official and individual capacities,** § § § § § § § § | |
| **Defendants.** § § | |

## COMPLAINT

COMES NOW Plaintiff Christopher Lee Willingham and hereby brings this Complaint for damages against Defendants Board of County Commissioners for McCurtain County, Oklahoma, the McCurtain County Sheriff's Office, Kevin Clardy, and Alicia Manning (together, "Defendants"), and for his claims against Defendants alleges and states as follows:

### PARTIES

1. Plaintiff Christopher Lee Willingham was at all times material herein a resident of Idabel, McCurtain County, Oklahoma.

2. Defendant Board of County Commissioners of McCurtain County, Oklahoma (the "Board"), is a political subdivision of the State of Oklahoma. The Board can be served at 8 NE 3rd Street, Idabel, Oklahoma 74745, or wherever else a representative may be found.

1

3.     Defendant Kevin Clardy is the Sheriff of McCurtain County. Upon information and belief, at all times material herein, Clardy was responsible for the policies, practices, and customs of Defendant McCurtain County Sheriff's Office ("MCSO"). Upon information and belief, Clardy was also responsible for the screening, hiring, training, retention, supervision, discipline, counseling, and control of the MCSO's staff, including Defendant Alicia Manning. Upon information and belief, Clardy was the final decision-maker, a policymaker for the MCSO, and supervised its operation and management on a daily basis. As the individual in charge of the MCSO's overall operation and daily management, Clardy was responsible for the implementation of, and adherence to, MCSO policies, procedures, and customs. At all times material hereto, Clardy was acting under color of law and within the scope of his official duties. Defendants Clardy and the MCSO can be served at 200 N. Central, Idabel, Oklahoma 74745, or wherever else they may be found.

4.     Upon information and belief, Defendant Alicia Manning was at all times material hereto a resident of Idabel, McCurtain County, Oklahoma, and an employee of the MCSO. Defendant Manning may be served at 200 N. Central, Idabel, Oklahoma 74745, or wherever else she may be found.

5.     Manning is sued in her official and individual capacities. To the extent Manning's torts described herein were committed in her official capacity as third-in-command at the MCSO, the Board is liable for such torts committed within the scope of her employment with the MCSO.[1]

---

[1] *See* 51 Okla. Stat. tit. 51, § 153.

## JURISDICTION AND VENUE

6. Willingham's claims against Defendants are for violations of federal constitutional rights secured by the First Amendment. Willingham's federal claims are brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

7. Willingham's state law claims for slander and intentional infliction of emotional distress are supplemental claims based on state law. This Court has jurisdiction over Willingham's supplemental claims pursuant to 28 U.S.C. § 1367. With respect to Willingham's state law claims, the Board received timely and effective notice of Willingham's claims in accordance with the Oklahoma Governmental Tort Claims Act by letter filed with the office of the clerk of the governing body on or about December 6, 2022.[2] The Board took no action within the 90-days; therefore, the claims are deemed constructively denied. This action is further brought within 180-days of denial.

8. Willingham and Defendants reside in this Judicial District. Willingham's causes of action arise in this Judicial District. Venue is proper in the Eastern District of Oklahoma.

## BACKGROUND

9. Freedom of the press is the bedrock of democracy and human rights. Access to reliable and independent information is paramount. Journalists and reporters—who play an indispensable role in this—find themselves under pressure around the world and right here in McCurtain County, Oklahoma, as governments attempt to silence those who scrutinize their actions too closely. Journalists and reporters may be victims of threats and harassment, yet the

---

[2] *See* 51 Okla. Stat. tit. 51, § 156.

press provides a crucial service necessary for any democracy to function: accountability for public authorities.

10. Plaintiff Christopher Lee Willingham is such a journalist. Willingham has worked as a reporter for the McCurtain Gazette for 18 years. The McCurtain Gazette is a newspaper that was founded in 1905 and located in Idabel, Oklahoma.

A. **Willingham Investigates and Reports on Malfeasance at the MCSO for the McCurtain Gazette.**

11. One of Willingham's beats as a reporter for the McCurtain Gazette is to investigate and report on the MCSO.

12. In 2021, the McCurtain Gazette began investigating multiple allegations at the MCSO brought forward by former and current department employees. The investigation resulted in an eight-part series authored by Willingham that the McCurtain Gazette published between November 21, 2021, and April 24, 2022.[3]

13. On or about November 21, 2021, in the first installment in the series, Willingham reported, among other things, on an emergency meeting of the jail trust board and boxes of reportedly tainted homicide evidence. The article also addressed "rumors . . . spreading among the public and in [Sheriff Kevin Clardy's] own office" of "a sexual relationship between the sheriff and sheriff's department domestic violence investigator Alicia Manning."

14. On or about December 2, 2021, in the second installment in the series, Willingham reported on Sheriff Clardy appointing Larry Hendrix as a temporary jail administrator at a jail trust

---

[3] The McCurtain Gazette and Willingham covered other controversies at the MCSO. The eight-part series discussed herein contained reporting about the MCSO's intentional interference with the reporting of the McCurtain Gazette, particularly Willingham, in late 2021 and 2022.

special meeting, after which two jail employees, both former sheriff's employees, were immediately fired.

15.     On or about December 9, 2021, in the third installment in the series, Willingham reported that the "two most prolific investigators of the last five years [were] no longer employed at the sheriff's department, one having resigned after being demoted to patrolman and the other having been fired." The article also reported that Sheriff Clardy, Hendrix, and Captain Alicia Manning "began an investigation as to who was talking to the newspaper." Following an interview with Willingham, Sheriff Clardy reportedly stated: "Anybody who talks to Chris [Willingham] is fired." Manning reportedly threatened to get search warrants for all deputies' cell phones to see who was talking to the newspaper. Willingham further reported that the McCurtain Gazette received information that Clardy, Hendrix, and Manning were attempting to get a search warrant to seize Willingham's cell phone to identify his sources. The article included additional reports that several current and former officers had begun calling for Sheriff Clardy to be removed from office on the grounds that he demonstrated habitual or willful neglect of duty, had willful maladministration in office, and had shown gross partiality in office to Manning, who was promoted extremely quickly at the MCSO despite having no prior law enforcement experience.

16.     Also, on or about December 9, 2021, in the fourth installment in the series, the McCurtain Gazette published that a MCSO drug dog got loose in an Allen, Texas neighborhood, and bit a young child multiple times, which resulted in the child being hospitalized. The dog was deemed a dangerous animal by a Collin County Judge and banned from the State of Texas. Sheriff Clardy denied any liability.

17. On or about December 12, 2021, in the fifth installment in the series, the McCurtain Gazette published a letter from former sheriff's narcotics investigator to county commissioners and the newspaper alleging Hendrix failed to investigate a gang rape while head of the Criminal Investigation Division and detailing his accounts of Clardy's and Manning's willful maladministration. The letter stated, among other things:

> Alicia [Manning] just continued to climb ranks at the Sheriff's Office until she made number three in charge. All this with zero experience as a patrolman at all. In charge of all employees, but she really had no idea what those employees do.
>
> The Sheriff's Office admin was extremely mad after the first newspaper came out addressing the rumors. They threatened to write search warrants for everyone's phones to find out who told the paper so that they could fire them. They even talked to some employees and questioned nearly all of them about who was talking. This would cause major problems and a big lawsuit, since a person is allowed to talk to the media and is protected by federal and state law.

18. That same article, authored by Willingham, reported that Manning, third in command at the MCSO behind Sheriff Clardy and Hendrix, addressed the series of controversies at the MCSO via a Facebook post as follows:

> The only people who suffer at the hands of power plays, politics and personal agendas are the victims of crimes. The real things we don't talk about.
>
> I am not going to stoop to the level of character assassinations and boy there are plenty.
>
> I am confident that God will deal with everyone. Pay $0.75 cents[4] for that.

19. On or about December 23, 2021, in the sixth installment in the series, Willingham reported that Sheriff Clardy appointed Alicia Manning's brother, Mike Manning, to undersheriff

---

[4] A copy of the weekend edition of the McCurtain Gazette—the edition that Willingham's story appeared in—costs exactly $0.75.

6

of the MCSO, and the county jail trust voted to make Hendrix the new county jail administrator. The article further stated:

> In the past month there has been a mass exodus of employees from the sheriff's department following more than a year's worth of controversies this newspaper has covered in this series. . . .
>
> When this newspaper first contacted the sheriff's department Wednesday to confirm [Mike] Manning was the new undersheriff, the call was first cut off when a reporter asked who the undersheriff was. A reporter called back and asked to speak to the sheriff and was told he was not available Wednesday.
>
> Reporters then went to the sheriff's department with a state statute stating the sheriff must provide a list of current undersheriff and deputies, and the information is available to the public upon request. At that point, a reporter was allowed to interview [Mike] Manning.

20. On or about January 20, 2022, in the seventh installment in the series, Willingham reported that Sheriff Clardy violated the law by refusing to disclose 53 crime reports to Willingham under the Oklahoma Open Records Act ("ORA"). Notably, Sheriff Clardy's purported reasoning was that those reports concerned a juvenile or domestic violence victim and could not be discussed in order for the MCSO to comply with a Violence Against Women Act grant, which funded Alicia Manning's salary at the MCSO.

21. On or about April 24, 2022, in the eighth installment in the series, Willingham reported that documents recently received by the McCurtain Gazette stated that the Federal Bureau of Investigation and Oklahoma State Bureau of Investigation were investigating the March 13 in-custody death of Bobby Barrick. The article further stated that the MCSO denied eight ORA requests for documents by the McCurtain Gazette relating to the death. After the MCSO denied the newspaper's ORA requests, the McCurtain Gazette contacted the Oklahoma Press Association, which handles press legal matters. Those eight ORA refusals were preceded by nearly six months

of difficulty by the newspaper in obtaining basic reports and records despite transparency and cooperation by Sheriff Clardy in his first term and previous other sheriffs, dating back to the early 1980s. The Oklahoma Press Association thought the incident could be a precedent-setting case nationally and forwarded the ORA requests, as well as the series of stories into controversies at the MCSO, to the Reporter's Committee for Freedom of the Press ("RCFP") in Washington, D.C. Lawyers for the RCFP reviewed the newspaper's stories and ORA requests and believed the paper was entitled to the documents being requested under the ORA. Through the RCFP's efforts, the McCurtain Gazette received limited documentation relating to the March 13 death of Bobby Barrick, giving rise to Willingham's April 24, 2022 article.

**B.    Alicia Manning Retaliates Against Willingham for Articles He Wrote on Behalf of the McCurtain Gazette Covering the MCSO's Misconduct.**

22.    The McCurtain Gazette and Willingham continued to investigate and report on controversies at the MCSO.

23.    Then, on or about June 18, 2022, Manning unlawfully retaliated against Willingham for the articles he had written covering the MCSO's malfeasance. In a teleconference, Manning told a third party that Willingham exchanged marijuana for pornographic videos of children from Ian Highful. Highful was recently arrested for aggravated possession of child pornography, child exploitation, and indecent exhibitions.[5]

24.    Additionally, during the June 18, 2022 teleconference, Manning stated that Willingham was "one of them" and named Highful, Brad Porton (a/k/a Thomas Bradley Porton), and Bryan Nicholson. Porton was convicted on three dozen charges involving juveniles and

---

[5] *See* https://www.ksla.com/2022/10/07/former-teacher-arrested-several-felonies-including-child-pornography/.

sentenced to what amounts to the rest of his life in prison.[6] Nicholson was found guilty of child sexual abuse and possession of child pornography.[7]

25. The third party understood Manning to be accusing Willingham of committing sexual crimes against children.

26. Manning's statements about Willingham are false, slanderous, go beyond all possible bounds of decency, and are utterly intolerable in a civilized society.

27. Upon information and belief, Manning made these (and other) false statements about Willingham in retaliation for articles he wrote about the MCSO as a reporter for the McCurtain Gazette and to destroy his credibility as a reporter and journalist.

## COUNT I: FIRST AMENDMENT CLAIM – RETALIATION
### (Defendants Manning and the Board)

28. Willingham realleges and incorporates the preceding paragraphs as if fully stated herein.

29. When Willingham was reporting on the conduct and actions of the MCSO and Manning, he was exercising constitutionally protected rights.

30. Manning, acting under the color of state law in her official capacity as third-in-command at the MCSO, subjected Willingham to conduct that resulted in the deprivation of his constitutional rights, including freedom of speech and freedom of the press.

31. Specifically, in reaction to Willingham's protected First Amendment activities, Manning retaliated against him by attempting to intimidate him, harass him, and impede his ability to report on the governmental activities of Manning and the MCSO, including actions that raise

---

[6] *See* https://www.ksla.com/2022/10/27/mccurtain-authorities-eye-possibility-that-least-2-child-sex-crimes-cases-could-be-connected/.
[7] *See* http://www.ocdw.com/main/wp-content/uploads/2020/04/Nicholson.Bryan-Douglas.pdf.

serious questions of competency and misconduct. Manning retaliated against Willingham at least by telling a third party that Willingham exchanged marijuana for pornographic videos of children from Ian Highful and that Willingham was "one of them," naming Highful, Porton, and Nicholson, thereby falsely accusing Willingham of committing sexual crimes against children.

32. Manning's actions were unlawful and would chill an ordinary person in the exercise of First Amendment rights, and Willingham suffered damages as a result of her conduct.

33. The Board is liable for the torts of Manning to the extent she committed such torts within the scope of her employment with the MCSO.[8]

34. Manning acted willfully, knowingly, purposefully, and/or with deliberate indifference to deprive Willingham of his constitutional rights. As a result of the nature of Manning's conduct, Willingham is entitled to recover damages from Manning and/or the Board, including compensatory damages, damages for the impairment of his reputation and personal humiliation, damages for financial and psychological injuries caused by Manning's wrongful conduct, punitive damages, and reasonable attorneys' fees under 42 U.S.C. § 1988(b).

## COUNT II: SUPERVISORY LIABILITY CLAIM
**(Defendants Clardy, the MCSO, and the Board)**

35. Willingham realleges and incorporates the preceding paragraphs as if fully stated herein.

36. Prior to the acts and omissions alleged herein, Defendants Clardy, the MCSO, and the Board failed to create, adopt, and inculcate appropriate procedures and policies for officers, including supervisory officers, employed by them; failed to properly train, monitor, supervise, and discipline officers, including supervisory officers, employed by them; and failed to otherwise

---

[8] *See* 51 Okla. Stat. tit. 51, § 153.

institute adequate procedures and policies that would protect Willingham's rights. These acts and omissions were direct and proximate causes for the injuries complained of by Willingham.

37. Defendant Clardy, as the head of the MCSO, either knew of and acquiesced in the violations of Willingham's constitutional rights or personally directed those violations. There is an affirmative link between the violation of Willingham's constitutional rights and Defendant Clardy's actions and omissions such that Defendant Clardy is liable.

38. The acts and omissions of Defendant Clardy, the MCSO, and the Board were undertaken under color of state law and operated to deprive Willingham of his constitutionally protected rights.

39. In committing the acts set forth herein, Defendant Clardy, the MCSO, and the Board acted fraudulently, oppressively, maliciously, recklessly, and/or in knowing and conscious disregard of and callous indifference to Willingham's constitutional rights, justifying an award of punitive damages.

## COUNT III: SLANDER
**(Defendants Manning and the Board)**

40. Willingham realleges and incorporates the preceding paragraphs as if fully stated herein.

41. Manning made a false and unprivileged statement about Willingham, which charged with him a crime, tended directly to injure him with respect to his profession as a reporter, and which, by natural consequences, caused actual damages.

42. In particular, in the June 18, 2022 teleconference, Manning told a third party that Willingham exchanged marijuana for pornographic videos of children from Ian Highful, who was recently arrested for aggravated possession of child pornography, child exploitation, and indecent

exhibitions. Additionally, Manning stated that Willingham was "one of them" and named Highful, Porton, and Nicholson. Porter and Nicholson were recently convicted of sex crimes involving children. The third party understood Manning to be stating that Willingham had committed sexual crimes against children.

43. Manning's statements about Willingham are false and slanderous.

44. Manning's statements falsely charge Willingham with a crime, thus making them slander *per se*.

45. Willingham has suffered damages as a result of Manning's slanderous conduct, including impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.

46. The Board is liable for the torts of Manning to the extent she committed such torts within the scope of her employment with the MCSO.[9]

47. As a result of Manning's conduct, Willingham is entitled to actual and punitive damages, interest, and costs.

### COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Defendants Manning and the Board)**

48. Willingham realleges and incorporates the preceding paragraphs as if fully stated herein.

49. Manning acted intentionally or recklessly in making the false statements about Willingham during the June 18, 2022 teleconference. In particular, Manning stated that Willingham exchanged marijuana for pornographic videos of children from Highful and that

---

[9] *See* 51 Okla. Stat. tit. 51, § 153.

Willingham was "one of them," naming Highful, Porter, and Nicholson, wrongfully associating Willingham with sex crimes involving children.

50. Manning's conduct in making these false statements about Willingham was extreme and outrageous.

51. Manning's conduct has resulted in Willingham experiencing severe emotional distress. Upon learning of Manning's false statements about him in or around October 2022, Willingham was physically sick. Willingham and his wife have both experienced panic attacks and difficulty sleeping. Willingham has experienced suicidal thoughts and has sought therapy to manage the overwhelming distress. Manning's false statements have not only impaired Willingham's ability to do his job as a reporter for the McCurtain Gazette, but have also cost him standing within the community, as well as the loss of sources and friendships. Willingham fears for his personal safety and that of his family—particularly in light of the retaliatory nature of Manning's statements and her position of power within the MCSO.

52. The Board is liable for the torts of Manning to the extent she committed such torts within the scope of her employment with the MCSO.[10]

53. As a result of Manning's conduct, Willingham is entitled to actual and punitive damages, interest, and costs.

## RELIEF REQUESTED

54. Willingham realleges and incorporates the preceding paragraphs as if fully stated herein.

---

[10] *See* 51 Okla. Stat. tit. 51, § 153.

55. As a direct and proximate result of the wrongful and unlawful acts of Defendants, as described above, Willingham was injured, suffered, and continues to suffer damages, including severe emotional distress, anguish, humiliation, indignities, deprivation of constitutional rights, and other damages.

56. As a result of the above-described damages and injuries, Willingham is entitled to recover awards of full compensatory damages against Defendants in amounts to be determined at the trial of this cause.

57. Willingham requests damages in an amount sufficient to compensate him for all injuries and harm he suffered, as well as punitive damages as provided by law, along with costs of this action, pre- and post-judgment interest as provided by law, reasonable attorneys' fees, and such other and further relief as proves just.

March 6, 2023

Respectfully submitted,

*s/ Karly Rodine*
Cole B. Ramey, Esq.
Karly Stoehr Rodine, Esq. (OK Bar No. 30466)
Christin J. Jones, Esq. (OK Bar No. 32314)
Maeghan E. Whitehead, Esq.
**KILPATRICK TOWNSEND & STOCKTON LLP**
2001 Ross Avenue, Suite 4400
Dallas, TX 75201
Telephone: (214) 922-7100
Facsimile: (214) 922-7101
Email:   cramey@kilpatricktownsend.com
          krodine@kilptricktownsend.com
          cjones@kilpatricktownsend.com
          mewhitehead@kilpatricktownsend.com

*Attorneys for Plaintiff*
*Christopher Lee Willingham*