# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHRISTOPHER LEE WILLINGHAM,<br><br>Plaintiff,<br>*v.*<br><br>SHERIFF OF MCCURTAIN COUNTY, in his official capacity; KEVIN CLARDY, in his individual capacity; and ALICIA MANNING, in her individual capacity,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 6:23-cv-82-JAR |

**<u>OPINION AND ORDER</u>**

Before the Court are plaintiff Christopher Willingham's ("Willingham") objections to the summary-judgment evidence proffered by defendants Kevin Clardy ("Clardy"), [Dkt. 235 (SEALED)]; Alicia Manning ("Manning"), [Dkt. 236 (SEALED)]; and Sheriff of McCurtain County (the "Sheriff"), [Dkt. 237 (SEALED)]. Each defendant responded, [Dkts. 244, 246, 248 (SEALED)], and Willingham replied to each response, [Dkt. 254 (SEALED); Dkts. 250, 251]. For the reasons below, Willingham's objections are overruled, subject to the limitations stated herein.

## I. DISCUSSION

In the Tenth Circuit, courts may consider only admissible evidence on a summary judgment motion. *Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1268 (10th Cir. 1998). To defeat summary judgment, the nonmovant need not convince the court that he will prevail at trial, but he must cite sufficient evidence admissible at trial to allow a reasonable jury to find in his favor. *Garrison v. Gambro,*

*Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). A party asserting a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, … admissions, interrogatory answers, or other materials in the record; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. ("FRCP") 56(c)(1)(A)-(B). A party may object to material cited to support or dispute a fact on the ground it "cannot be presented in a form that would be admissible in evidence." FRCP 56(c)(2). The evidence need not be submitted "in a form that would be admissible at trial," *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006), but "the content or substance of the evidence must be admissible," *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). Once an objection is made, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." FRCP 56(c)(2) advisory comm. cmt. (2010). The objection "functions much as an objection at trial, adjusted for the pretrial setting." *Id.*

## A. PRINCIPLES COMMON TO ALL OBJECTIONS

Willingham's objections and replies rest largely on the same relevance and hearsay arguments. The Court resolves those common arguments here and applies them in Parts I.B through I.D.

### 1. Relevance

Evidence is relevant if "it has any tendency to make a fact more or less probable

than it would have been without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. ("FRE") 401. Willingham invokes the same standard, [Dkt. 251 at 3 (citing FRE 401-402), 5 (citing *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005))], but repeatedly treats arguments about weight, or about the soundness of a defendant's merits theory, as grounds for exclusion. They are not. Evidence need not be conclusive to be relevant, and an opponent's answer to it goes to weight and the merits. Nor does relevance depend on whether a document was created for, or is itself the subject of, a pending claim. The question is whether the evidence, offered for the purpose its proponent identifies, bears on a fact of consequence to a remaining claim or defense.

**2. Hearsay**

Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement." FRE 801(c)(2). A statement offered for another purpose is not hearsay, and "[s]tatements offered for the effect on the listener … are generally not hearsay." *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993); *see Futrell-Smith v. Brinker Int'l, Inc.*, No. 25-1324, 2026 WL 2592970, at *4 (10th Cir. Sept. 2, 2026) (unpublished) (applying *Faulkner* at summary judgment). For the same reason, a statement is not hearsay when offered only to show its occurrence, timing, and source, rather than the truth of its assertion. *See* FRE 801(c)(2).

In reply, Willingham contends each defendant actually offers the challenged third-party statements for their truth and "cannot have it both ways." [Dkt. 250 at 2-4; Dkt. 251 at 5-6; Dkt. 254 at 1-4 & n.1]. But whether a statement is hearsay depends

on the purpose for which it is offered, and each defendant has identified a purpose other than truth. The Court holds each defendant to this representation and considers the challenged statements only for the purposes identified in Parts I.B through I.D, not as evidence of misconduct by Willingham or of the truth of any assertion in them. *Cf.* FRE 105. To the extent any defendant's briefing relies on such a statement for its truth, the Court will disregard the use. Whether the evidence, so limited, supports a defendant's position is a question for the summary-judgment motions, not a ground for exclusion.

Willingham also argues a Rule 105 limiting instruction is a trial remedy that does not satisfy the summary-judgment standard. [Dkt. 254 at 4 (citing *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1210 (10th Cir. 2010))]. The Court does not defer the matter to trial; it applies the limitations stated in this Order now. And *Johnson*, as Willingham's parenthetical reflects, concerned hearsay the proponent had not shown could be presented in admissible form. Statements considered only for a non-hearsay purpose present no such problem.

Three further limits apply throughout. First, when a defendant offers his or her own out-of-court statements, they are not statements of an opposing party, *see* FRE 801(d)(2), and the Court does not consider them for their truth. Second, a statement bears on a listener's state of mind at the time of an act only if the listener received it before acting. Willingham is correct on this point, [Dkt. 254 at 1-3], and the Court applies it below. But timing limits only what a statement can prove; it does not convert a statement offered for a non-truth purpose into hearsay. The relevant

date, moreover, is when the listener received the information, not when a deposition was taken or a transcript or report was prepared. Third, Rule 805 permits hearsay within hearsay only if "each part of the combined statements conforms with an exception to the rule." FRE 805. The rule does not reach a layer which is not hearsay at all. When a proponent offers a statement, and the statements recounted within it, for purposes other than their truth, no layer requires an exception, and the hearsay-within-hearsay objection fails.

### B. Objections to Manning's Summary-Judgment Evidence

Willingham measures relevance of Manning's evidence only against his slander and intentional infliction of emotional distress ("IIED") claims, which he describes as his "Two Claims Against Manning Individually." [Dkt. 236 at 7]. But Count I is also asserted against Manning. [Dkt. 120, ¶¶ 41-46]. To prevail on Count I, Willingham must show his protected activity substantially motivated Manning's conduct. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Manning's state of mind is likewise at issue on the state-law claims. Willingham must prove "fault amounting at least to negligence" to establish slander, *Mitchell v. Griffin Television, L.L.C.*, 2002 OK CIV APP 115, ¶ 5, 60 P.3d 1058, 1061, and he contends Manning acted maliciously or in bad faith and therefore outside the scope of her employment under the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 O.S. §§ 151 *et seq.* [Dkt. 236 at 10-11]; *see* 51 O.S. § 152(12) (defining scope of employment as performance by an employee "acting in good faith" within the duties of the employee's office). Evidence of what information Manning had, and what she did with it,

therefore bears on facts of consequence to each claim against her. Willingham replies motive, fault, and malice are measured as of the challenged conduct, Manning's June 18, 2022 call with Lori Chipps-Bray ("Bray"). [Dkt. 254 at 3]. The Court agrees; information Manning received after the call cannot show her state of mind during it. *See* Part I.A.2.

Manning represents she offers none of the challenged third-party statements to prove Willingham committed any crime or misconduct, but to show "what she had been told, what she knew, and what she did with that information[.]" [Dkt. 246 at 2]. Willingham replies (1) the matter asserted by declarants John Jones, Brian Sears, Jesse McDaniel, and Robert Buckman is Willingham's connection to Ian Highful; (2) Manning's response describes their statements in just those terms; (3) her falsity and "of and concerning" arguments depend on the truth of that association; and (4) Manning has sworn she has no first-hand knowledge of any such association. [Dkt. 254 at 3-4 (citing Dkt. 246 at 6-7, 9; Dkt. 236 at 35)]. The limitation stated in Part I.A.2 answers these points: the Court does not consider any third-party statement as proof of an association between Willingham and Highful. Manning's interrogatory answers confirm she cannot prove such an association through these statements; they do not bar use of the statements to show what Manning had been told. And to the extent Manning's statements to Bray purported to relay what others had reported, the making of those reports bears on the accuracy of her statements whether or not the reports were true. Whether this limited use supports Manning's merits arguments is a question for her summary-judgment motion.

### 1. Exhibit 2 | Manning Deposition Excerpts

Willingham objects to excerpts of Manning's deposition, [Dkt. 206-2], on hearsay and relevance grounds. [Dkt. 236 at 5, 8-10, 12]. The excerpts fall into three groups. The first (76:12-15 and 77:8-79:4) concerns Exhibit 5, and the second (79:8-16, 80:8-13, and 199:4-11) concerns Exhibit 8. Willingham's objections to those two groups mirror his objections to the corresponding exhibits and are resolved with them in Parts I.B.2 and I.B.5. [*Id.* at 5, 8-10, 12]. The third group (85:2-87:5 and 194:2-195:12) is challenged as hearsay only. [*Id.* at 5, 8].

***Relevance***. Willingham replies Manning did not respond to his relevance objection to Exhibit 2 and therefore failed to carry her burden. [Dkt. 254 at 4 (citing FRCP 56(c)(2) advisory comm. cmt. (2010))]. That objection reaches only the first two groups of excerpts, which share the subject matter of Exhibits 5 and 8 and are relevant for the reasons stated in Parts I.B.2 and I.B.5. Manning responded to the objections to those exhibits, [Dkt. 246 at 7-8], and her stated purpose applies equally to her testimony, [*id.* at 2]. Her failure to repeat the explanation for each item does not require the Court to disregard testimony whose relevance is apparent from the record. The objection is overruled.

***Hearsay***. In the third group of excerpts, Manning recounts what Jones, Sears, McDaniel, and Buckman told her about Willingham and his asserted connections to Highful. Willingham argues Manning offers the testimony for its truth and that no exception applies. [Dkt. 236 at 8]. Manning responds she offers it to show what she had heard and from whom. [Dkt. 246 at 6]. For this purpose, the statements are not

hearsay. *Faulkner*, 3 F.3d at 1434. Manning has personal knowledge of what was said to her and could so testify at trial. Nor does Rule 805 apply: Manning's deposition testimony is sworn, and the only out-of-court statements it recounts are those of the four declarants, none of which is offered for its truth. Willingham replies Manning provides no dates for the excerpts in Exhibit 2. [Dkt. 254 at 3]. The missing dates limit what the excerpts can prove, but they do not make them inadmissible. The excerpts bear on Manning's state of mind on June 18, 2022 only to the extent the record shows she had received the information by then. Subject to these limitations, the objection is overruled.

### 2. Exhibit 5 | *Miranda* Form for Codi Stinnett

Willingham objects to Codi Stinnett's *Miranda* form, [Dkt. 206-5], on hearsay and relevance grounds. [Dkt. 236 at 5, 8-10]. Exhibit 5 is a *Miranda* waiver form and written statement executed by Stinnett on April 19, 2022, approximately two months before the Bray call.

***Relevance***. Willingham argues Exhibit 5 is irrelevant because Manning does not believe he committed any crime and had no evidence Stinnett's statement referred to him. Those points go to weight, not relevance. In her second challenged statement to Bray, Manning purported to relay "one of the victims in that case said there was a guy named Chris that used to come and exchange weed for videos, from Ian Highful, of kids." [Dkt. 206-4 at 193-92]. Whether a witness had given investigators such an account before June 18, 2022 bears on the accuracy of Manning's report, on whether the statement was of and concerning Willingham, and

on her fault and motive. That Stinnett's "Chris" was never identified as Willingham is an argument Willingham may press on the merits; it does not make the exhibit irrelevant. The objection is overruled.

***Hearsay***. Manning does not offer Exhibit 5 to prove anyone exchanged marijuana for videos. She offers it to show Stinnett made the statements to investigators before June 18, 2022. [Dkt. 246 at 7]. A statement offered to prove that it was made, rather than that it is true, is not hearsay. *See* FRE 801(c)(2). Willingham's authorities do not hold otherwise. As his own parentheticals reflect, *U.S. v. Livingston*, 661 F.2d 239, 242 (D.C. Cir. 1981), *U.S. v. Ragghianti*, 560 F.2d 1376, 1381 (9th Cir. 1977), *Martin v. U.S.*, 528 F.2d 1157, 1161 (4th Cir. 1975), and *U.S. v. Tavares*, 512 F.2d 872, 875 (9th Cir. 1975), address whether statements to investigators may be used substantively, *i.e.*, for their truth. *Heal v. Wells Fargo, N.A.*, 560 F. Supp. 3d 347, 357 (D. Mass. 2021), likewise concerns hearsay within a public record offered for its truth. Willingham does not challenge the form's authenticity or contend the fact of Stinnett's statement could not be proved at trial. The objection is overruled. The Court considers Exhibit 5, and Manning's related testimony, [Dkt. 206-2 at 26 (76:12-15), 27-29 (77:8-79:4)], only for the fact, content, and timing of Stinnett's statement.

**3. Exhibit 6 | Notice of Tort Claim**

Willingham objects to his "Notice of Tort Claim," [Dkt. 206-6], on relevance grounds only. [Dkt. 236 at 5, 10-11]. Manning relies on the December 2, 2022 notice as Willingham's statement, made through counsel, of her having acted within her

capacity as an employee of the McCurtain County Sheriff's Office ("MCSO"). [Dkt. 246 at 7]. Willingham responds the notice was a statutory prerequisite to his claims against the acting Sheriff of McCurtain County, not a judicial admission on the scope-of-employment issue, [Dkt. 236 at 10-11 (citing 51 O.S. § 152(C))], and adds in reply the notice pleaded the county's liability only "to the extent" Manning acted within the scope of her employment, which says nothing about her subjective good faith, [Dkt. 254 at 5].

Whether Manning acted within the scope of her employment is contested on Counts III and IV, because an employee acting within the scope of her employment is not individually liable under the GTCA. 51 O.S. § 163(C). Willingham's own argument confirms the issue is in dispute. A prior statement bearing on a disputed issue need not be conclusive to be relevant. The notice's purpose and alternative framing bear on its weight, which may be slight, not its admissibility. Because Manning disclaims any contention the notice is a judicial admission, [Dkt. 246 at 7], the Court does not treat it as one. The objection is overruled, although the notice has no bearing on Count I.

**4. Exhibit 7 | Bruce Willingham Deposition Excerpts**

Willingham challenges an excerpt of his father's deposition, [Dkt. 206-7], for lack of personal knowledge and speculation. [Dkt. 236 at 5, 11]. Asked whether he was "the person who publicized the call to all members of county government and then to all the people of McCurtain County," Bruce Willingham, publisher of the McCurtain Gazette (the "Gazette"), answered, "That's the first time that the call

became public." [Dkt. 206-7 at 16 (165:17-23)]. Willingham argues his father could not know whether anyone else had published the call earlier, pointing to his father's testimony that "there was lots of social media out there already that was claiming [Willingham] was a pedophile." [*Id.* at 14 (163:5-6)].

A witness may testify to a matter only if "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FRE 602. As the Gazette's publisher, Bruce Willingham has personal knowledge of whether, and when, the Gazette published its article about the call. Fairly read, his answer describes the article as the first public disclosure of the call of which he was aware. The social-media testimony Willingham cites concerns claims about Willingham himself, not publication of the call. To this extent, the objection is overruled. Willingham replies awareness cannot establish personal knowledge of the article being the "first time" the call ever became public. [Dkt. 254 at 5-6]. The Court agrees and, for this reason, does not consider the testimony as proof no other person published the call before December 13, 2022.

**5. Exhibit 8 | Manning's Notes from the MCSO Investigation File of Highful**

Willingham challenges Manning's notes from the Highful investigation file, [Dkt. 206-8], and her related testimony, [Dkt. 206-2 at 29 (79:8-16), 30 (80:8-13), 62 (199:4-11)], on hearsay and relevance grounds. [Dkt. 236 at 5, 12].

***Relevance***. Willingham's only relevance argument is Bray's termination from the MCSO in 2016 and her lack of involvement in the Highful investigation. Bray's role is beside the point. The notes are offered to show what information Manning had

recorded in the investigation, which bears on her knowledge and motive. The objection is overruled.

***Hearsay***. The notes present two layers. The third-party statements recorded in them are offered to show what Manning was told, not their truth, and are not hearsay for this purpose. The notes themselves are Manning's out-of-court statements and, offered by Manning, are not opposing-party statements. Their content can nonetheless be presented in admissible form at trial through Manning's own testimony about the information she received and when she received it. Such testimony satisfies Rule 56(c)(2), and the Court need not decide whether the notes independently qualify under Rule 803(6) or 803(8)(A), as Manning contends. [Dkt. 246 at 8]. Willingham's reply contending Manning offers the notes for their truth, [Dkt. 254 at 3], fails for the reasons stated in Part I.A.2. The notes bear on Manning's state of mind on June 18, 2022 only to the extent they record information she received before the call. The objection is overruled, subject to these limitations.

**6. Exhibits 9 and 10 | Recording and Transcript of Manning-Buckman Conversation**

Willingham challenges the recording, [Dkt. 206-9], and transcript, [Dkt. 206-10], of a conversation between Buckman and Manning on hearsay and relevance grounds, and he contends the transcript was not produced in discovery. [Dkt. 236 at 5, 13].

***Rule 37(c)(1)***. Willingham contends Exhibit 10, a transcript dated February 18, 2026, bears no Bates numbers and was never produced. He does not contend the recording itself, Exhibit 9, was withheld. A party who fails to disclose information as

required by Rule 26(a) or (e) may not use it on a motion "unless the failure was substantially justified or is harmless." FRCP 37(c)(1). In making that determination, the Court considers "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Each factor favors Manning. A transcript of a produced recording adds no new information. Willingham identifies no surprise or prejudice and does not contend the transcript is inaccurate; any prejudice could be cured by reference to the recording itself; no trial disruption would result; and nothing suggests bad faith. Any failure to produce the transcript was therefore harmless. The objection is overruled.

***Relevance and Hearsay***. Buckman's statements, including his account of a traffic stop during which Willingham and Highful were together in a vehicle, are offered to show what Buckman reported to Manning, not their truth. [Dkt. 246 at 9]. For this purpose, they are not hearsay, and they are relevant to Manning's knowledge and motive. *See* Part I.A. Manning's own recorded statements are not considered for their truth. Willingham replies Exhibit 10 is dated February 18, 2026, long after the call. [Dkt. 254 at 3]. The date reflects when the transcript was prepared, not when the conversation occurred. Buckman's statements bear on Manning's state of mind on June 18, 2022 only to the extent the record shows she heard them before the call. The objections are overruled, subject to these limitations.

### 7. Exhibit 11 | Manning's Memo to FBI Agent Jeff Youngblood

Willingham challenges Manning's memo to FBI Agent Jeff Youngblood, [Dkt. 206-11], on grounds of authenticity, relevance, hearsay, and hearsay within hearsay. [Dkt. 236 at 6, 13-15].

***Authenticity***. Willingham contends the memo is undated and that Manning testified she does not know when she wrote it. [*Id.* at 13-14 (citing Dkt. 236-1 at 7 (139:11-15))]. The authentication threshold is low. The proponent need only produce "evidence sufficient to support a finding that the item is what the proponent claims it is." FRE 901(a). Testimony of a witness with knowledge "that an item is what it is claimed to be" meets this standard. FRE 901(b)(1). Manning identified the memo at her deposition, during examination by Willingham's counsel, as her letter to Agent Youngblood. [Dkt. 246 at 9 (citing Dkt. 246-2 at 3 (139:1-25))]. Her inability to recall when she wrote it does not undermine the identification; uncertainty about the date goes to weight, not admissibility. Manning also relies on *Law Co. v. Mohawk Construction & Supply Co.*, 577 F.3d 1164, 1170 (10th Cir. 2009), for the proposition that documents produced in discovery require no further authentication. [*Id.*]. *Law Co.* does not reach so far. The Tenth Circuit held "documents produced during discovery that are on the letterhead of the opposing, producing part are authentic per se." 577 F.3d at 1170. This rule covers documents offered against the producing party; it does not authenticate a party's own documents when she offers them herself. The Court therefore relies on Manning's deposition testimony under Rule 901(b)(1) and overrules the objection.

***Relevance***. The memo reflects Manning's referral of information concerning the Highful investigation to a federal agency. By Manning's own account, the memo refers to the December 2022 Gazette article and therefore post-dates the June 18, 2022 call. [Dkt. 246 at 9-10]. Willingham replies retaliatory motive is measured at the time of the challenged conduct. [Dkt. 254 at 2-3]. The Court agrees the memo cannot show what Manning knew or intended on June 18, 2022, and does not consider it for this purpose. But Rule 401 does not confine relevant evidence to contemporaneous proof. Manning's later referral is circumstantial evidence from which a factfinder could draw inferences about her motive and good faith, and its probative force is a matter of weight. The objection is overruled.

***Hearsay***. Manning offers the memo to show she made the referral and what she conveyed, not the truth of the information conveyed. [Dkt. 246 at 9-10]. For this purpose, neither the memo nor the third-party statements within it are hearsay, and the memo's post-call date is immaterial because it is not offered for its effect on any listener. Because no layer is offered for its truth, Manning has answered the hearsay-within-hearsay objection, notwithstanding Willingham's reply asserting she did not separately address it. Willingham's argument concerning the trustworthiness required by Rule 803(8)(B) addresses an exception for statements offered for their truth and therefore does not apply. The objection is overruled, subject to the limitations stated above.

**8. Exhibit 12 | OSBI Report 2024-547/3**

Willingham challenges Oklahoma State Bureau of Investigation ("OSBI")

Report 2024-547/3, [Dkt. 206-12], on grounds of authenticity, hearsay, and hearsay within hearsay. [Dkt. 236 at 6, 15-16].

***Authenticity***. Willingham argues that no testimony from the report's author or the agency supports its authenticity, that the report is not self-authenticating because it bears no seal or certification, and that discovery has closed. [*Id.* at 15 (citing FRE 902(2))]. At summary judgment, the question is not whether the report has been authenticated but whether it can be presented in admissible form at trial. FRCP 56(c)(2). The report bears OSBI's case number, letterhead, and agent identification, *see* FRE 901(b)(4), and Manning represents it can be authenticated at trial through an OSBI custodian or the case agent, or by certified copy, *see* FRE 901(b)(7), 902(4). [Dkt. 246 at 10]. Willingham does not contend the report is anything other than what it purports to be, and the close of discovery does not prevent a records custodian from authenticating a public record at trial. Manning has therefore met her burden to "explain the admissible form that is anticipated." FRCP 56(c)(2) advisory comm. cmt. (2010). The objection is overruled.

***Hearsay***. The report likewise presents two layers. The inner layer consists of the allegations Joshua Richards made to OSBI. Manning offers them to show Richards made the allegations and OSBI, an outside agency, received and investigated them, not to prove the allegations are true. [*Id.*]. For this purpose, they are not hearsay. Because they are not offered for their effect on Manning, the report's May 21, 2024 date does not matter. The outer layer, OSBI's record of what was reported and of its own investigative activity, is admissible in a civil case under Rule

803(8)(A)(ii)-(iii) if "the opponent does not show that the source of information or other circumstances indicated a lack of trustworthiness." FRE 803(8)(B); *see Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169-70 (1988). Willingham's trustworthiness arguments concern Richards' aliases and disappearance, Willingham's denials, Manning's uncertainty about the allegations, and the district attorney's later decision not to prosecute. Each goes to Richards' credibility. None shows OSBI's record of what was reported to it is untrustworthy, and Richards' statements are not offered for their truth. Because each layer is either not hearsay or within an exception, Rule 805 is satisfied. The objection is overruled. The Court considers the report only to show Richards made the allegations and reported them to OSBI, and OSBI handled them, not for their truth.

**9. Exhibit 13 | McCurtain Gazette Article**

Willingham challenges the December 13, 2022 Gazette article titled "Reporter Files Pre-Suit Notice Against Manning," [Dkt. 206-13], on hearsay and relevance grounds. [Dkt. 236 at 6, 16-17].

***Hearsay***. Manning offers the article to show whether, when, and by whom the contents of the call were published to readers in McCurtain County. [Dkt. 246 at 11]. A statement offered to prove that it was published, rather than that its contents are true, is not hearsay. See FRE 801(c)(2). Contrary to Willingham's arguments in reply, proving what was published differs from proving its truth. The objection is overruled.

***Relevance***. Willingham argues the article, like the notice it reports, is irrelevant because no notice was required for his claims against Manning

individually. This argument explains why the notice was filed, not why the article was published or what effect its publication had. In reply, Willingham contends Manning's causation and "chilling" theories are merits arguments having no bearing on whether her statements were false, defamatory, and unprivileged when made. [Dkt. 254 at 6]. But those are not the only elements at issue. Willingham must also establish severe emotional distress on Count IV, *Breeden v. League Servs. Corp.*, 1978 OK 27, ¶ 7, 575 P.2d 1374, 1376, and a chilling injury on Count I, *Worrell*, 219 F.3d at 1212. How the June 2022 statements reached the public bears on the injury and damages Willingham attributes to them under each count. Manning's arguments on these issues go to the merits, which is the reason the evidence is relevant, not a reason to exclude Exhibit 13. The objection is overruled.

**10. Disposition of Objections to Manning's Evidence**

Willingham's objections to Manning's summary-judgment evidence are overruled, subject to the following limitations. The third-party statements in Exhibits 2, 5, 8, 9, 10, 11, and 12 are considered only for the purposes stated above and not as evidence of misconduct by Willingham, and they bear on Manning's state of mind on June 18, 2022 only to the extent the record shows she received the information before the call. Manning's own out-of-court statements in Exhibits 8, 9, 10, and 11 are not considered for their truth. The testimony in Exhibit 7 is not considered as proof no other person published the call before December 13, 2022. Exhibit 6 is not considered on Count I or as a judicial admission. Exhibit 11 is not considered as evidence of Manning's state of mind on June 18, 2022. Exhibit 13 is considered only for the fact,

timing, and source of its publication and not for the truth of any statement it reports.

### C. OBJECTIONS TO THE SHERIFF'S SUMMARY-JUDGMENT EVIDENCE

Willingham objects to four of the Sheriff's exhibits (Exhibits 3, 9, 10, and 11) and raises no objection to the remainder. [Dkt. 237 at 2]. The Sheriff asks the Court to disregard the objections entirely, contending the Local Civil Rules permit only one brief in response to a motion for summary judgment and, by filing his objections separately, Willingham exceeded the thirty-five-page limit the Court set for his response. [Dkt. 248 at 1-4]. The Court need not resolve this dispute. Rule 56(c)(2) permits a party to object to cited materials as incapable of presentation in admissible form, and the Court may consider only admissible evidence in any event. *Wright-Simmons*, 155 F.3d at 1268. Because the objections fail on the merits, the Court declines to disregard them and overrules them for the reasons below.

Each objection repeats one Willingham raised to Manning's evidence. Exhibit 11, like Manning's Exhibit 5, is Codi Stinnett's April 19, 2022 *Miranda* waiver form and written statement. Exhibits 9 and 10, like Manning's Exhibits 6 and 13, are the December 2, 2022 notice and the Gazette's December 13, 2022 article reporting it. The challenged deposition excerpts overlap in part with those addressed in Part I.B.1, and Willingham's arguments are materially the same. *Compare* [Dkt. 237 at 3-7; Dkt. 251 at 3-6] *with* [Dkt. 236 at 8-11, 16-17; Dkt. 254 at 2-6]. The Court therefore resolves these objections by reference to Parts I.A and I.B and addresses only what is new.[1]

What is new, principally, is the claim against which relevance is measured.

---

[1] Although Willingham's chart cites Rule 403, he develops no argument under that rule, and the Court does not address it. [Dkt. 237 at 2].

Willingham argues the challenged evidence has nothing to do with the claims or defenses in this case and goes to no element of the claims against the Sheriff. [Dkt. 237 at 3-7]. To hold the Sheriff liable on Count II, however, Willingham must first establish a constitutional violation by Manning. *See Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). This requires proof that Manning's conduct caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity" and was "substantially motivated as a response to" his protected activity. *Worrell*, 219 F.3d at 1212. What Manning knew when she spoke to Bray on June 18, 2022, and how her statements later reached the public, bear on those elements.

**1. Exhibits 3 and 11 | Manning Deposition Excerpts & *Miranda* Form for Codi Stinnett**

Willingham objects to Codi Stinnett's *Miranda* form, [Dkt. 204-11], and Manning's related testimony, [Dkt. 204-3 at 39 (76:12-15), 40-42 (77:8-79:4), 41 (78:10-21), 42 (79:8-12), 43 (80:8-16), 85 (199:4-11), 90-91 (219:2-220:13)], on hearsay and relevance grounds. [Dkt. 237 at 2, 5-7]. The Sheriff relies on these exhibits to support his statements of fact 23, 24, and 42. [Dkt. 248 at 10-11].

***Relevance***. Willingham argues Stinnett's statement is irrelevant because Manning testified she had no evidence it referred to Willingham and does not believe he committed any crime, and because Clardy testified Willingham should not have been interviewed or charged in the Highful case. [Dkt. 237 at 6-7]. As explained in Part I.B.2, these points go to weight, not relevance. The Sheriff points to Manning's testimony identifying Stinnett as the source of the allegations about a "Chris" she

relayed to Bray. [Dkt. 248 at 11 (citing Dkt. 204-3 at 90-91 (219:2-220:13))]. Whether Manning was repeating an allegation a witness had made to investigators two months earlier, or was acting for some other reason, bears directly on whether her statements were substantially motivated by Willingham's reporting, an element of the underlying violation on which Count II depends. Willingham's observation about Manning describing Stinnett's statement to Bray differently than she did under oath, [Dkt. 237 at 5], is an argument for the merits, not a reason to exclude the evidence. The objection is overruled.

***Hearsay***. This objection repeats Willingham's objection to Manning's Exhibit 5 and is overruled for the reasons stated in Part I.B.2. The Sheriff, like Manning, offers Stinnett's statement not for its truth but to show Stinnett made it and that it preceded Manning's call with Bray. [Dkt. 248 at 12-13].

**2. Exhibits 9 and 10 | Notice of Tort Claim & McCurtain Gazette Article**

Willingham objects to his "Notice of Tort Claim," [Dkt. 204-9], and the December 13, 2022 Gazette article titled "Reporter Files Pre-Suit Notice Against Manning," [Dkt. 204-10], on grounds of hearsay and relevance. [Dkt. 237 at 2, 3-5].

***Relevance***. Willingham argues the notice concerns claims, no longer pending, against Manning in her official capacity, the MCSO, and the Board of County Commissioners, and the article, like the notice, goes to no element of the claims against the Sheriff. [Dkt. 237 at 3-5]. The Sheriff responds the exhibits show who disseminated Manning's statements to the public, when, how, and why, and he cites deposition testimony indicating no one other than Willingham, his parents, Bray, and

Manning knew of the call before the article was published. [Dkt. 248 at 7]. Unlike Manning, the Sheriff does not offer the notice on the scope-of-employment issue. He offers it to show what Willingham reported and when, an account the Gazette published to McCurtain County eleven days later. The reason for filing the notice does not determine its relevance for this purpose. Whether and how Manning's statements reached the public bears on the injury Willingham attributes to them, which is at issue on the underlying retaliation claim and on damages under Count II. *See Worrell*, 219 F.3d at 1212. Whether the Sheriff's account of the publication is correct is a question for the merits. Willingham replies the exhibits relate to claims against parties no longer before the Court, and discoverability is a lower threshold than admissibility. [Dkt. 251 at 3-4]. The Court applies Rule 401, not the discovery standard, and, as explained in Part I.A.1, relevance turns on the purpose for which a document is offered, not the claims for which it was prepared. The objections are overruled.

***Hearsay***. Willingham's objection to the article, a single sentence calling it "an out-of-court statement made by non-party offered by Manning for the truth of the matter asserted," [Dkt. 237 at 5], is construed as directed to the Sheriff's use of Exhibit 10. The Sheriff offers the article only to show the Gazette published Willingham's account on its front page on December 13, 2022, not to prove Manning made the statements it reports, which the Sheriff disputes. [Dkt. 248 at 7-10]. For the reasons stated in Part I.B.9, the article is not hearsay when offered for this purpose; it proves the fact, timing, and audience of its publication by its existence.

Willingham's reply does not alter this conclusion. The Sheriff's acknowledgement of newspaper articles as "generally … inadmissible hearsay," [Dkt. 251 at 4 (quoting *Murphy v. City of Tulsa*, 2018 WL 666010, at *3 (N.D. Okla. Feb. 1, 2018))], refers to decisions involving articles offered for the truth of the statements reported in them. [Dkt. 248 at 7-10]. The article does not lack "value at all" unless its substance is true, because the Sheriff's argument rests on the publication alone. *Marsee v. U.S. Tobacco Co.*, 866 F.3d 319 (10th Cir. 1989), may recognize notice as one non-truth purpose, but Rule 801(c)(2) is not limited to notice. And the nonbinding decision in *U.S. v. Cmty. Health Sys., Inc.*, No. CIV-05-279-WT-ACT, 2013 WL 10914292 (D.N.M. Nov. 27, 2013), did not reject a comparable "fact of publication" theory; as Willingham describes it, the articles there were offered to prove hospital officials had given testimony never actually given, a use dependent on the truth of the articles' reports. [Dkt. 251 at 4-5]. The Court therefore need not reach the Sheriff's alternative contention about presenting the article's contents at trial through Bruce Willingham's testimony. The objection is overruled.

### 3. Disposition of Objections to the Sheriff's Evidence

Willingham's objections to the Sheriff's summary-judgment evidence are overruled, subject to the following limitations. Exhibit 11, and the related portions of Exhibit 3, are considered only for the fact, content, and timing of Stinnett's statement and not as evidence of misconduct by Willingham. Exhibit 10 is considered only for the fact, timing, and source of its publication and not for the truth of any statement it reports. The Sheriff's request to disregard the objections is declined.

### D. Objections to Clardy's Summary-Judgment Evidence

Willingham objects to two of Clardy's six exhibits: Exhibit 4, the transcript of a May 11, 2024 interview of Joshua Richards conducted by Manning, in which Clardy too part (the "Interview"), [Dkt. 214-4], and Exhibit 5, an OSBI report dated May 21, 2024, with associated interviews (the "Report"), [Dkt. 214-5]. [Dkt. 235 at 2-3]. Both exhibits concern the subject of Clardy's May 23, 2024 Facebook post, [Dkt. 214-6], on which Willingham's defamation claim (Count III), and his IIED claim (Count IV) against Clardy rest. [Dkt. 120, ¶¶ 67-73, 83-86]. The post does not name Willingham. It states that "other victims have came [sic] forward and disclosed sexual abuse by that suspect and a new suspect," and that the matter "is under investigation. By [sic] the OSBI." [Dkt. 214-6]. Clardy disclaims any contention that Richards' allegations are true. He offers the exhibits to show Richards came forward, Clardy heard the allegations, and OSBI investigated them—the events the post describes—and to show what Clardy knew when he wrote it. [Dkt. 244 at 1-2, 4].

The Court holds Clardy to this representation and applies the principles stated in Part I.A. It considers Richards' statements only for those purposes and not as evidence of misconduct by Willingham, and it does not consider Clardy's own out-of-court statements for their truth. And only information Clardy had before May 23, 2024 can bear on his state of mind when he wrote the post. Both exhibits predate the post, but the Report bears on Clardy's state of mind only to the extent the record shows he then knew of its contents.

### 1. Exhibit 4 | Transcript of May 11, 2024 Richards Interview

Willingham objects to the Interview on grounds of relevance, Rule 403, hearsay, and hearsay within hearsay. [Dkt. 235 at 2, 3-6].

***Relevance***. Willingham argues (1) each element of his defamation claim "focuses on the Facebook post itself and Clardy's intent," (2) his IIED claim turns only on whether Clardy's threats and post were extreme and outrageous and caused severe emotional distress, and (3) the Interview bears on neither. [*Id*. at 3-4]. He is mistaken. To establish defamation, Willingham must prove a false and defamatory statement, an unprivileged publication to a third party, fault amounting at least to negligence, and either actionability per se or special damage. *Mitchell*, 2002 OK CIV APP 115, ¶ 5. The Interview bears on several of these elements. Whether the post's report of victims coming forward was false depends in part on whether the event occurred. Because the post names no one, what Richards said, compared with how the post described it, bears on whether readers would understand the post to refer to Willingham. And the Interview bears directly on fault. Willingham contends Clardy wrote the post "knowing the allegations were false." [*Id*. at 4]. Clardy attended the Interview less than two weeks before he wrote the post, and what he heard there is probative of what he knew and believed. Willingham's own falsity evidence underscores the point: he relies on Clardy's testimony disclaiming any evidence of Willingham being a perpetrator, [*id*. at 3-4 (citing Dkt. 235-1 at 4-5 (151:21-152:11))], but in the surrounding testimony Clardy identified "the Farley – Josh Farley incident of 2024" as the exception, [Dkt. 244 at 3 (citing Dkt. 244-2 at 3 (151:4-6), 4 (152:1-4))].

The Interview is equally relevant to Count IV, which requires extreme and outrageous conduct and resulting severe emotional distress. *Breeden*, 1978 OK 27, ¶ 7. Whether the post was extreme and outrageous cannot be assessed apart from what it reported, and a post relaying a person's coming forward and an ongoing OSBI investigation differs from an accusation with no basis. [Dkt. 244 at 3]. Willingham's own arguments confirm the point. His theory is Clardy and Manning "put [Richards] up to it," and he cites the Interview's contents as evidence of "Manning coaching and encouraging Richards." [Dkt. 235 at 6 (citing Dkt. 214-4 at 48 (47:1-8, 17-20)); Dkt. 244 at 2, 4 (citing Dkt. 244-3 at 3 (60:7-13))]. Willingham cannot rely on the Interview's contents to show the allegations were orchestrated while maintaining the Interview is irrelevant to the claims those allegations underlie. Whether the post was false, or what Clardy actually believed, are questions for the merits. It is enough for the Interview to make facts of consequence more or less probable. FRE 401.

Richards' dismissal from this action does not change the analysis. Willingham's authorities exclude evidence relevant only to dismissed claims or parties. [Dkt. 235 at 4-5]; *see Allan v. Springville City*, 388 F.3d 1331, 1335 (10th Cir. 2004) (affirming order in limine excluding evidence relevant only to claims dismissed on summary judgment); *Dixon v. Okla. ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, No. CIV-19-391-GLJ, 2023 WL 3898736, at *2 (E.D. Okla. June 8, 2023) (granting unopposed motion in limine to exclude evidence of dismissed claims and parties at trial). The Interview is relevant to the claims pending against Clardy, not merely to the dismissed claims against Richards. The objection is overruled.

***Rule 403***. Willingham argues in the alternative that the danger of unfair prejudice and confusion of the issues substantially outweighs any probative value of the Interview. [Dkt. 235 at 4-5]; *see* FRE 403. Those dangers arise chiefly before a jury. Even in a bench trial, excluding relevant evidence on the basis of unfair prejudice "is a useless procedure." *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981). The point applies with greater force at summary judgment, where the Court does not weigh the evidence and has already confined the Interview to its permissible purposes. Willingham's argument also rests on the premise of the Interview having no probative value, which the Court has rejected. The objection is overruled, without prejudice to Willingham's ability to seek exclusion or a limiting instruction at trial.

***Hearsay***. Willingham argues that the Interview, and each speaker's statements within it, are hearsay offered for their truth, and that the Interview falls outside the public-records exception because Richards and the circumstances of the Interview lack trustworthiness. [Dkt. 235 at 5-6 (citing FRE 803(8)(B); *Burns v. Bd. of Cnty. Comm'rs*, 330 F.3d 1275, 1284 n.5 (10th Cir. 2003); *U.S. v. Mackey*, 117 F.3d 24, 28 (1st Cir. 1997))]. Each argument rests on the mistaken premise of Clardy offering the Interview for its truth. He offers it to show Richards made the allegations, Clardy heard them, and they were referred to OSBI. [Dkt. 244 at 4]. For those purposes, Richards' statements are not hearsay. FRE 801(c)(2); *Faulkner*, 3 F.3d at 1434. Clardy's and Manning's statements during the Interview are likewise not considered for their truth. Because no layer is offered for its truth, Rule 805 and

*Burns* are not implicated. Willingham does not contend the Interview's content could not be presented at trial, including through Clardy, who was present.

The trustworthiness arguments fail for the same reason. Rule 803(8)(B) limits an exception for public records offered for their truth, and *Mackey* holds only that third-party statements are not admissible under that exception "merely because they appear within public records." 117 F.3d at 28. Clardy does not invoke the exception. Willingham's points—the Interview postdates this lawsuit, Richards used aliases and could not be located, Richards' wife knew Manning, Manning coached Richards, Willingham denies the allegations under oath, and Manning did not know whether the allegations were true and was uncomfortable taking Richards' call—go to Richards' credibility and to Willingham's theory of orchestrated allegations. [Dkt. 235 at 5-6]. Clardy disputes several of them. [Dkt. 244 at 5]. These disputes concern weight and the merits, not whether the Interview may be considered for its limited purposes, and the Court need not resolve them. The objection is overruled, subject to the limitations stated above.

**2. Exhibit 5 | OSBI Report and Interviews**

Willingham objects to the Report on grounds of authenticity, hearsay, and hearsay within hearsay. [Dkt. 235 at 2, 6-7]. The Report arises from the same OSBI investigation, Case No. 2024-547, as Manning's Exhibit 12, and Willingham's objections largely repeat those he raised to Exhibit 12. *Compare* [Dkt. 235 at 6-7] *with* [Dkt. 236 at 15-16]. They fail for the reasons stated in Part I.B.8, and the Court addresses only what is new.

***Authenticity***. As explained in Part I.B.8, the question at summary judgment is whether the Report can be presented in admissible form at trial, not whether it has already been authenticated by its author, an OSBI witness, or a Rule 902(2) certification. FRCP 56(c)(2). Like Manning's Exhibit 12, the Report bears OSBI's case number, agency markings, and the reporting agent's identification, *see* FRE 901(b)(4), and Clardy represents it can be authenticated at trial through the case agent, an OSBI custodian, or a certified copy, *see* FRE 901(b)(7), 902(4). [Dkt. 244 at 6]. Clardy also testified that he asked OSBI's Lt. Sonny Stewart to take the case. [*Id.* (citing Dkt. 244-2 at 5 (153:19-24))]. And Willingham himself treats the Report as genuine, relying on the district attorney's later review of "the allegations made by Richards in connection with the Report." [Dkt. 235 at 7]. The Court does not, however, rely on *Law Co.*, [Dkt. 244 at 2], which, as explained in Part I.B.7, applies to documents offered against the producing party; Clardy does not contend Willingham produced the Report.

Willingham replies that authentication is a prerequisite to admissibility, documents submitted at summary judgment must already be authenticated or self-authenticating, and Clardy does not dispute the Report's inadmissibility as offered. [Dkt. 250 at 3]. Clardy concedes no such thing. [Dkt. 244 at 6]. And even accepting Willingham's premise, authentication requires only "evidence sufficient to support a finding that the item is what the proponent claims it is," FRE 901(a), and the record already contains such evidence in the Report's distinctive characteristics, Clardy's testimony, and Willingham's own reliance on the Report. The same is true of

Manning's Exhibit 12. The objection is overruled.

***Hearsay***. The Report presents the same two layers addressed in Part I.B.8, and the same analysis applies: Richards' recorded statements are offered to show what was reported to OSBI, not their truth, and OSBI's records of what was reported to it and of its own investigative activity are admissible under Rule 803(8)(A)(ii)-(iii) absent a showing of untrustworthiness. FRE 803(8)(B); *Beech Aircraft*, 488 U.S. at 169-70. Willingham's arguments are again directed at Richards, not at OSBI's record. The only new point—that the district attorney later found Richards' allegations lacked prosecutorial merit, of which Clardy and Manning did not learn until their March 2026 depositions, [Dkt. 235 at 7]—concerns the merit of the allegations, not the reliability of OSBI's record of their making and investigation. Whatever bearing the later declination has on the merits, it does not affect admissibility. *See* [Dkt. 244 at 6]. Because each layer is either not hearsay or within an exception, Rule 805 is satisfied. Willingham's reply contending Clardy does not dispute the presence of hearsay within hearsay in the Report and cannot "have it both ways," fails for the reasons stated in Part I.A.2. The objection is overruled.

**3. Disposition of Objections to Clardy's Evidence**

Willingham's objections to Clardy's summary-judgment evidence are overruled, subject to the following limitations. Exhibits 4 and 5 are considered only to show Richards made the allegations, Clardy heard them, and they were reported to and handled by OSBI, and not as evidence of misconduct by Willingham. Clardy's and Manning's own statements in Exhibit 4 are not considered for their truth. Exhibit

5 bears on Clardy's state of mind only to the extent the record shows he knew of its contents when he wrote the post. The Rule 403 objection to Exhibit 4 is overruled without prejudice to its reassertion at trial.

## II. CONCLUSION

IT IS THEREFORE ORDERED that Willingham's objections to Manning's summary-judgment evidence, [Dkt. 236], are **OVERRULED**, subject to the limitations stated in Parts I.A and I.B.

IT IS FURTHER ORDERED that Willingham's objections to the Sheriff's summary-judgment evidence, [Dkt. 237], are **OVERRULED**, subject to the limitations stated in Parts I.A and I.C.

IT IS FURTHER ORDERED that Willingham's objections to Clardy's summary-judgment evidence, [Dkt. 235], are **OVERRULED**, subject to the limitations stated in Parts I.A and I.D.

DATED this 23rd day of November, 2026.

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE